CV1-518 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-91-518-CV





ALICEAN R. KALTEYER AND CHARLES F. KALTEYER,



 APPELLANTS


vs.





DENNIS R. SNEED, M.D.,



 APPELLEE


 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT



NO. 485,536, HONORABLE JOSEPH HART, JUDGE



 





PER CURIAM


 Alicean R. Kalteyer and Charles F. Kalteyer appeal from the summary judgment
rendered against them in their medical malpractice action against Dr. Dennis R. Sneed. In four
points of error, appellants contend that the trial court erred in: (1) ruling appellants' first
amended motion for new trial to be untimely; (2) failing to consider appellants' second amended
motion for new trial for guidance in determining whether to grant a new trial; (3) abusing its
discretion by refusing to exercise that discretion; and (4) granting appellee's motion for summary
judgment. We will overrule all points of error and affirm the judgment of the trial court.


Background



 This malpractice action arose from Dr. Sneed's medical treatment of Alicean
Kalteyer, specifically, her claim of injuries resulting from a corticosteroid injection and an X-ray
given in April 1988. In June 1990, appellants filed suit. Appellants requested several
postponements, to which appellee agreed before filing his motion for summary judgment on June
11, 1990, which was granted on August 5, 1991. On August 30, 1991, appellants filed a motion
for new trial, arguing that they did not need expert testimony to defeat the motion for summary
judgment. Subsequently, on October 8, 1991, appellants filed a motion for leave to file their first
amended motion for new trial and presented an affidavit from a medical expert concerning
appellee's standard of care in his treatment. On October 17, 1991, the trial court denied the
motion for leave to file the first amended motion for new trial and denied the original motion for
new trial. On October 18, 1991, appellants filed a motion for leave to file a second amended
motion for new trial, which was denied October 21, 1991.



Amended Motions for New Trial



 In point of error one, appellants contend that the trial court erred in overruling their
first amended motion for new trial on the basis that it was not timely filed. Appellants argue that
the various appellate court cases (1) applying Rule 329b(b) have ignored the phrase "without leave
of court":


 One or more amended motions for new trial may be filed without leave of court
before any preceding motion for new trial filed by the movant is overruled and
within thirty days after the judgment or other order complained of is signed.



Tex. R. Civ. P. 329b(b). Appellants argue that to give meaning to all of the language in the rule,
we must read the rule as implying that "with leave of court" a motion could be filed later than
thirty days after the judgment is signed, or after a preceding motion has been overruled, otherwise
there would be no need for the phrase "without leave." In other words, the effect of the cases is
to leave 329b(b) reading the same way that it would if the phrase "without leave of court" were
not in the rule at all. 

 First, we note that the language "without leave of court" can be interpreted simply
by giving it the meaning that, under the two circumstances listed, the filing of an amended motion
is a matter of right that does not require the court's permission. See Huddleston v. Speegle, 557
S.W.2d 178, 182 (Tex. Civ. App.--Waco 1977, writ ref'd n.r.e.) (when the original motion for
new trial was timely and not yet acted on, a timely amended motion for new trial was a matter of
right and an abuse of discretion to refuse to file).

 Appellants rely on a case holding contrary to the previously cited decisions that an
amended motion for new trial filed more than thirty days after the judgment is signed is a nullity. 
Homart Development Co. v. Blanton, 755 S.W.2d 158, 159-60 (Tex. App.--Houston [1st Dist.]
1988, orig. proceeding). In Homart, the trial court denied a motion for new trial. Within 30 days
of that date, a "motion for rehearing," treated as an amended motion for new trial, was filed and
granted. The argument was made that the amended motion for new trial, coming more than 30
days after the judgment's signing, was a nullity. The court held that 329b(b) did not cover the
situation before it but covered only the situation in which a timely filed motion for new trial was
pending and an attempt was made to file an amended motion later than 30 days after the signing
of the judgment. Id. at 160. However, the situation in which the amended motion was filed
within 30 days after a timely filed motion was overruled was covered by 329b(e) that gives the
trial court plenary power for 30 days after overruling a motion for new trial. Id.

 Homart cites a civil procedure commentary on the effect of an attempt to file an
amended motion for new trial later than 30 days after the signing of judgment, but within the time
period of the trial court's plenary power:


 An original or amended motion filed more than 30 days after the judgment or order
is signed is a nullity insofar as a subsequent appeal is concerned. An amended
motion filed after the 30-day period but within the time during which the court has
plenary power over its judgment depends for its effect upon the attitude of the
court. Its filing does not operate to extend the court's jurisdiction over the
judgment for any longer period than that given by a timely filed original or
amended motion, that is, 30 days after the overruling of the timely motion. If the
trial court ignores the tardy motion, it is ineffectual for any purpose. The court,
however, may look to the motion for guidance in the exercise of its inherent power
and acting before its plenary power has expired, may grant a new trial; but if the
court denies a new trial, the belated motion is a nullity and supplies no basis for
consideration upon appeal of grounds which were required to be set forth in a
timely motion.



Id. (citing 4 Roy W. McDonald, Texas Civil Practice in District and County Courts, § 18.06.02,
at 287 (Frank W. Elliott ed., rev. ed. 1984)).

 First, we note another relevant section of McDonald that may help illuminate what
he means in the above-cited section. "The time fixed for filing a motion for new trial restricts the
rights of the parties to seek such relief but does not limit the inherent power of the court to act
without a motion." McDonald supra, § 18.03 at 266 (emphasis added). The commentary in §
18.06 simply may be emphasizing that during the entire period of the court's plenary power, it
can grant a new trial.

 Given the line of appellate cases holding that an amended motion for new trial filed
later than 30 days after the signing of the judgment is untimely, given that a logical interpretation
of Rule 329(b) exists that gives meaning to all of the language, and given that the authority on
which appellants rely states that if a late motion is ignored, it is innefectual for any purpose, we
do not think that the trial court abused its discretion in refusing to file the amended motions for
new trial. We overrule point of error one.

 In point of error two, appellants contend that the trial court erred by not
considering their second amended motion for new trial for guidance in determining whether they
were entitled to a new trial. First, even the authority on which appellants rely says that if the
court ignores the tardy motion, the motion is ineffectual for any purpose. Second, at the time of
the filing of the second amended motion for new trial, whose contents were the same as the first
amended motion for new trial, the court already had had a hearing, denied leave to file an
amended motion for new trial, and overruled the original motion for new trial. For the reasons
discussed above, the trial court properly denied both amended motions as untimely. We overrule
point of error number two.

 In point of error three, appellants contend that the trial court abused its discretion
in denying their amended motions for new trial as not timely filed. Appellants' argument is that
the trial court abused its discretion by failing to exercise its discretion because the court
determined it could not rule. The trial court did rule, however. It ruled that the motions were
not timely filed. Inasmuch as we have held the motions not timely, we cannot say the trial court
abused its discretion in denying them. We overrule point of error three.




Motion for Summary Judgment



 In point of error four, appellants contend that the trial court erred in granting
appellee's motion for summary judgment. We review a summary judgment according to the
following principles:



 1. The movant for summary judgment has the burden of showing that there is
nogenuine issue of material fact and that it is entitled to judgment as a matter of
law.


 2. In deciding whether or not there is a disputed material fact issue precluding
summary judgment, evidence favorable to the non-movant will be taken as true.


 3. Every reasonable inference must be indulged in favor of the non-movant and any
doubts resolved in its favor.


Nixon v. Mr. Property Management Co., 690 S.W.2d 546, 548-48 (Tex. 1985).

 The parties agree that under Texas law "a patient has no cause of action against his
doctor for malpractice, either in diagnosis or treatment, unless he proves by a doctor of the same
school of practice as the defendant that the diagnosis or treatment complained of was negligence
and that it was a proximate cause of the patient's injuries." Williams v. Bennett, 610 S.W.2d 144,
146 (Tex. 1980); Bowles v. Bourdon, 219 S.W.2d 779, 782 (Tex. 1949). In general, a plaintiff
must prove the elements of negligence and proximate cause by expert testimony. Hart v. Van
Zandt, 399 S.W.2d 791, 792 (Tex. 1965); Garza v. Levin, 769 S.W.2d 644, 646 (Tex.
App.--Corpus Christi 1989, writ denied) (proximate cause is element in medical negligence that
ordinarily must be proven by expert testimony; summary judgment for defendant doctor affirmed);
Kemp v. Heffelman, 713 S.W.2d 751, 752 (Tex. App.--Houston [1st Dist.] 1986, no writ)
(summary judgment for defendant doctor upheld based on his affidavit that he complied with
applicable standard of care in spite of plaintiff's numerous lay complaints concerning doctor's
care). Once the movant's proof negates an essential element of each of the non-movant's legal
theories, the non-movant has the burden to raise a fact issue to defeat summary judgment. Tex.
R. Civ. P. 166a(c).

 In his motion for summary judgment, appellee contended that his summary
judgment evidence established that the treatment complained of did not breach the applicable
standard of care and did not proximately cause any injury. His summary judgment evidence
consisted of his affidavit and an affidavit from another doctor who had reviewed the relevant
medical records. Because appellants provided no controverting expert testimony, appellee
contended that the evidence established that there was no genuine issues of material fact with
regard to one or more elements of appellants' cause of action.

 Appellants contended in their response to the motion, however, that they did not
need to supply controverting expert testimony because the application of res ipsa loquitur to the
medical records kept by appellee shows malpractice. Although the principle of res ipsa loquitur
has been applied in Texas in medical malpractice cases only rarely, Haddock v. Arnspiger, 793
S.W.2d 948, 951 (Tex. 1990), appellants argue that their case presents an appropriate application. 
When res ipsa loquitur has been applied, it has been in instances in which the nature of the alleged
malpractice and injuries is plainly within common lay knowledge, such as operating on the wrong
part of the body or leaving surgical instruments or sponges within the body. Compare Manax v.
Ballew, 797 S.W.2d 71, 73 (Tex. App.--Waco 1991, writ denied)(operating on wrong part of
patient's back to remove lump); with Irick v. Andrew, 545 S.W.2d 557, 559 (Tex. Civ.
App.--Houston [14th Dist.] 1976) (use of X-ray apparatus not within common knowledge). 
Appellee contends that res ipsa loquitur has never been applied in this type of fact situation and
that the use of the doctrine cannot be expanded to types of cases other than the ones to which it
had been applied before the August 29, 1977, effective date of the Medical Liability and Insurance
Improvement Act. (2)

 In this case, the medical records on which appellants rely show the patient's report
of an adverse reaction to a steroid injection given by a previous doctor. The patient said that she
received a shot, her hip went numb, she went to the hospital, and was examined by a neurologist. 
(The record does not include any hospital or doctor reports from that examination.) Appellee
noted this history and made a note not to give Ms. Kalteyer another cortisone shot at the time of
the initial consultation. According to the same records, the patient was very averse to any kind
of injection or to remaining on a sustained course of medication, had had adverse gastrointestinal
reactions to some previously prescribed medications, and was under treatment for other medical
problems. In her affidavit attached to the response for summary judgment, Mrs. Kalteyer said
that after receiving the shot on April 15, she again experienced numbness and difficulty walking. 
The affidavit also states that her eyes were improperly shielded from exposure during an X-ray
taken April 29, causing numerous symptoms: dry and burning eyes; brown discoloration of her
eyelids and at the site of the injection; hair loss; and a variety of vision problems.

 We will assume for the purposes of argument that appellants can show the existence
of a fact issue on negligence based on applying res ipsa loquitur; that is, an adverse reaction to
a shot of a substance to which the patient has previously adversely reacted is the type of result that
does not occur in the absence of negligence. (3) We will also assume a fact issue exists with regard
to negligence in performing the X-ray.

 Even so, appellee has established that there is no fact issue with regard to the
element of proximate cause because appellants have not provided controverting expert testimony
on this element. There must be a causal connection between the complained-of act and the
complained-of injury. See Garza, 769 S.W.2d at 646. Application of res ipsa loquitur would
allow an inference of negligence in the absence of expert testimony that the standard of care had
been breached, but it does not eliminate the need for evidence of causation. See Jim M. Perdue,
The Law of Texas Medical Malpractice, 22 Hous. L. Rev. 1, 231 (1985) ("Case law reveals that
plaintiffs in a res ipsa case have the most trouble establishing the element of proximate
causation."). In general, proximate cause must be shown by expert testimony. See Roark v.
Allen, 633 S.W.2d 804, 811 (Tex. 1982) (evidence that child injured by forceps slipping during
birth; no direct evidence that alleged improper handling of forceps caused them to slip; "area
sufficiently complex that a layman cannot infer, from those facts alone, the cause of the forceps'
slipping"); see generally Darrell L. Keith, Medical Expert Testimony in Texas Medical
Malpractice Cases, 43 Baylor L. Rev. 1, 83-96 (1991).

 We do not think the general experience of laypersons adequate to evaluate the
medical evidence without expert testimony. A lay evaluation of this body of medical records
might establish, in lay opinion, a question whether the reported symptoms were caused by the
treatment or simply another symptom of an underlying disorder; i.e., conflicting inferences raising
a fact issue. However, an expert evaluating the same records might know that the treatment
administered could not have caused the symptoms reported. We do not have the necessary expert
testimony to show a causal link between the treatments and the symptoms.

 Because appellee has demonstrated that no material fact issue exists on an element
of appellants' cause of action, he was entitled to summary judgment. We overrule point of error
four and affirm the trial court's judgment.


[Before Chief Justice Carroll, Justices Jones and Kidd]

Affirmed

Filed:  September 23, 1992

[Publish]
1. [1] Reviea v. Marine Drilling Co., 800 S.W.2d 252, 258 (Tex. App.--Corpus Christi 1990, writ
denied); Voth v. Felderhoff, 768 S.W.2d 403, 412 (Tex. App.--Fort Worth 1989, writ denied);
Willacy County v. South Padre Land Co., 767 S.W.2d 201, 202 (Tex. App.--Corpus Christi 1989,
no writ); Equinox Enter., Inc. v. Associated Media, Inc., 730 S.W.2d 872, 874 (Tex. App.--Dallas
1987, no writ); Baker v. Wal-Mart Stores, Inc., 727 S.W.2d 53, 55 (Tex. App.--Beaumont 1987,
no writ); L.B. Foster Co. v. Glacier Energy, Inc., 714 S.W.2d 48, 49 (Tex. App.--San Antonio
1986, writ ref'd n.r.e.); Lynd v. Wesley, 705 S.W.2d 759, 762 (Tex. App.--Houston [14th Dist.]
1986, no writ); Lind v. Gresham, 672 S.W.2d 20, 22 (Tex. App.--Houston [14th Dist.] 1984, no
writ).
2. [2] Tex. Rev. Civ. Stat. Ann. art. 4590i, § 7.01 (West Supp. 1992); Haddock, 793 S.W.2d at
949-956 (discussion of res ipsa loquitur and effect of the act).
3. [3] Such an assumption appears contrary to existing law. See Menefee v. Guehring, 665
S.W.2d 811, 818 (Tex. App.--Houston [1st Dist.] 1983, writ ref'd n.r.e.) (verdict for defendant
physician proper when no expert testimony that he should have stopped drug therapy sooner after
allergic reaction or that continuance was contrary to established medical standards); see generally
Annotation, Malpractice: Physician's Liability for Injury or Death Resulting from Side Effects
of Drugs Intentionally Administered to or Prescribed for Patient, 45 A.L.R.3d 928-947 (1972).
The fact of a bad result or complication is not enough in and of itself to allow an inference of
negligence. See Haddock, 793 S.W.2d at 953.


 We note that Mrs. Kalteyer was injected in her left hip on March 31, 1988, with no
complications reported or noted. The injection in her right hip, given April 15, 1988, is the one
complained of. These circumstances illustrate the hazard of trying to make a lay evaluation of
medical records rather than having expert testimony. It may be that temporary numbness is
considered an acceptable reaction, when compared to the possibility of long-term relief from the
shot, such that it does not rule out ever administering further injections, especially if the patient
may have adverse reactions to other possible remedies as well. Evaluating whether appellee's
risk-benefit analysis fell below an acceptable standard of care is properly the function of expert
testimony.